# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHIRLEY A. BONHAM, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-10-403-SPS |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Shirley A. Bonham requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do his previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born April 1, 1946, and was sixty-three years old at the time of the administrative hearing. (Tr. 58, 106). She completed high school and four years of college, and has worked as a cashier. (Tr. 46-47, 132). The claimant alleged that she has been unable to work since October 26, 2000, because she has chronic obstructive pulmonary disease (COPD), asthma, and a brain aneurysm, and she cannot be around people. (Tr. 125).

## Procedural History

On January 4, 2009, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110). Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 25, 2010. (Tr. 14-24). The Appeals Council denied review, so the ALJ's opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that, through the claimant's date last insured of June 30, 2006, she retained the residual functional capacity (RFC) to perform light work, 20 C.F.R. § 404.1567(a), with the additional limitation of avoiding concentrated exposure to dust fumes, gasses, and other pulmonary irritants. (Tr. 17). The ALJ concluded that although the claimant could not

return to her past relevant work, she was nevertheless not disabled through her date last insured because she retained transferable job skills that would allow her to perform the sedentary job of check cashier. (Tr. 23-24).

## Review

The claimant contends that the ALJ erred: (i) by substituting his own medical opinion for that of the claimant's treating physician, Dr. Joe Schelbar; (ii) by improperly rejecting the medical opinion of another treating physician, Dr. Larry Lewis; and (iii) by improperly finding that the claimant had transferable skills. The Court finds that the ALJ failed to properly determine whether the claimant had transferable skills, and the decision of the Commissioner must therefore be reversed.

The ALJ found that, through the date last insured, the claimant had the severe impairment of COPD, and the non-severe impairment of a previous brain aneurysm. (Tr. 16). The claimant's brain aneurysm was identified in December 2000, and was surgically clipped in January 2001. (Tr. 173-195). The claimant was treated in 2004 for complaints of depression and asthma. (Tr. 303). On June 27, 2006, Dr. Joseph Schlecht admitted the claimant into the hospital for acute pyelonephritis, and to treat her COPD. (Tr. 198-202). Dr. Schlecht noted that the claimant had reactive airway disease, used Combivent regularly, and was taking a preventive medication that seemed to be helping. Additionally, he stated that she was positive for dyspnea on exertion and shortness of breath at time, but that those did not interfere with her daily activities. (Tr. 200). He further stated that "[s]he has no disability." (Tr. 201). Evidence past the claimant's date last insured indicate that her COPD continued to worsen. (Tr. 345, 369-377). On

-4-

January 3, 2010, Dr. Schelbar prepared a letter to the claimant's representative, stating that he had treated her since August 2007, and that "it could be guessed" from an August 2007 pulmonary function test that the claimant's pulmonary function fell within the severe category in 2006 based on pulmonary function data. (Tr. 406).

At the administrative hearing, the claimant testified as to her brain aneurysm and subsequent surgery, which caused some short-term memory loss and also temporarily affected her ability to taste and smell. (Tr. 35-37). She also stated that she had stopped smoking six months earlier, that she uses breathing treatments every four to six hours, and that she had trouble breathing around large numbers of people. (Tr. 36-37). She further testified that cleaning exhausts her, that she cooks most of her meals in a slow cooker, and that she has to alternate between standing and sitting. (Tr. 43-45). The Vocational Expert ("VE"), Melissa Brassfield, also testified at the hearing. The ALJ asked the VE about the exertional and skill level of the claimant's past work, and the VE explained that it was classified as a sedentary job but was medium skilled work as the claimant performed it. (Tr. 46-47). In a hypothetical, the ALJ inquired as to whether a person who was sixty years old on the date last insured, had a college education and the claimant's past work experience could perform medium while avoiding concentrated exposures to dust, fumes, gases, and other pulmonary irritants. The VE stated that she could. When the ALJ inquired as to the same characteristics limited to light work and avoiding all irritants, the VE testified that such a person could not return to the past relevant work as the claimant had performed it. (Tr. 47). The VE identified the claimant's transferable skills as receiving payments, counting money, making change,

and balancing cash at hand, which would be found in the sedentary job of check cashier. (Tr. 48). Last, the ALJ asked whether someone with the claimant's characteristics could perform sedentary work while avoiding pulmonary irritants and also allowing for the claimant to take breaks for her medical breathing treatments. The VE testified that there were no jobs available for such limitations. (Tr. 48).

The ALJ summarized the medical evidence, including the claimant's testimony at the hearing, and concluded that the claimant was not under a disabling impairment from her onset date through her date last insured. (Tr. 17-23). He noted that the claimant was an individual closely approaching advanced age on her date last insured, and that by the administrative hearing she was an individual of an advanced age. (Tr. 23). The ALJ found that the claimant was unable to perform any past relevant work but possessed skills that would enable her to perform the sedentary job of check cashier, *i. e.*, skills of receiving payments, counting money, making change, and balancing cash. (Tr. 23-24).

Transferability of skills for persons of advanced age is defined as "so closely related to other jobs which they can perform that they could be expected to perform these other identified jobs at a high degree of proficiency with a minimal amount of job orientation." Soc. Sec. Rul. 82-41, 1982 WL 31389, at *5 (1982). "When the transferability of skills arises with respect to a claimant of advanced age, the ALJ must present the vocational expert with a hypothetical that asks whether or not the skill is transferable with little or no vocational training or job orientation." *Nielson v. Sullivan*, 992 F.2d 1118, 1121 (10th Cir. 1993). Here, the ALJ did not ask the VE any questions, or in any way elicit information as to the level of vocational adjustment necessary for the

claimant to perform the job of check cashier. *Cf. Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005) ("[T]he ALJ carefully led the VE through the regulatory requirements for transferability of skills for a person of advanced age.").

The Commissioner argues there is evidence in the record to support a finding that the claimant could perform the jobs with little or no vocational adjustment. But the ALJ made no such finding, *see, e. g., Webster v. Barnhart*, 187 Fed. Appx. 857, 860-861, 2006 WL 1806609, at *2 (10th Cir. July 3, 2006) ("We have held that an ALJ must make findings specifically targeted at the level of vocational adjustment needed for[the claimant] to enter potential [identified] positions, as required by Social Security Ruling 82-41. . . . That the record contains evidence that may support a specific factual finding cannot substitute for the finding itself."), *citing Nielson*, 992 F.2d at 1121-22, and the Court may not make such a finding for the ALJ. *See, e. g., Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) (A reviewing court is "'not in a position to draw factual conclusions on behalf of the ALJ.'"), *quoting Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir. 1991).

Because the ALJ failed to make the necessary fact findings concerning vocational adjustment by the claimant, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.

The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 20th day of March, 2012.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma